RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0056P (6th Cir.)
File Name: 01a0056p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

STEPHEN MICHAEL WEST,
　　　　　*Petitioner-Appellee,*

　　*v.*

RICKY J. BELL, Warden,
　　　　　*Respondent-Appellant.*

No. 01-5237

Filed: February 27, 2001

Before: BOGGS, NORRIS, and MOORE, Circuit Judges.

### ORDER VACATING STAY

BOGGS, Circuit Judge.　Stephen Michael West is a Tennessee prisoner under a sentence of death for the 1986 rape and murder of two East Tennessee women. He held the state to its burden of proving a capital offense at trial and sentencing, strenuously argued his case on direct appeal through a petition for certiorari in the United States Supreme Court, and filed for post-conviction relief, which the state courts ultimately denied on June 7, 2000. He did not petition for a writ of certiorari, the time for filing which expired on September 5, 2000. On November 7, 2000, the Tennessee Supreme Court entered an order setting March 1, 2001, as his

1

execution date. No further action was taken by West or on his behalf until February 13, 2001, when West elected electrocution as the method of his execution. *See* Tenn. Code Ann. § 40-23-114(c). West instructed his attorneys not to file a petition for a writ of habeas corpus in federal court. *See* 28 U.S.C. § 2254.

On February 20, 2001, attorneys who represented West in his state post-conviction proceedings, some of whom had worked with West for more than five years, commenced litigation in the United States District Court for the Middle District of Tennessee by filing a motion for appointment of counsel and a stay of execution. The attorneys hoped to conduct an investigation of West's mental health, arguing that Formal Ethics Opinion No. 92-F-129 obligated them to determine whether West had knowingly, voluntarily, and competently waived his right to seek federal habeas. The district court conducted a hearing, during which Judge Campbell thrice asked West if he would like to address the court. Although Judge Campbell indicated that knowing whether West wanted counsel or wished to file a habeas petition would significantly aid the court's resolution of the pending motions, West answered the court's questions by saying "No, sir" twice and once gave no audible response.

On the authority of 21 U.S.C. § 848 and *McFarland v. Scott*, 512 U.S. 849 (1994) (allowing a federal court to appoint counsel to help a prisoner prepare a habeas petition when the prisoner sought such counsel and could not prepare the petition himself), Judge Campbell granted the motion to appoint Roger W. Dickson as counsel "to represent Mr. West regarding any petition under 2254 that will be filed or any decision by Mr. West not to file a petition," but denied the request for a stay of execution. Judge Campbell immediately transferred the case to the Eastern District of Tennessee, where the underlying crime occurred.

Before Judge Collier of the Eastern District, the Warden renewed his argument that the district court lacked jurisdiction to enter a stay of execution. The court

coterminous with the date upon which West's one-year period for filing a federal habeas corpus petition will expire.

Bell attempts to argue that the State will be significantly harmed by our upholding the stay of execution. Such arguments, however, are exaggerated. As noted above, the stay granted to defense counsel was short, providing counsel with only three months in which to conduct an investigation. Moreover, I find it difficult to believe that the State will be unduly prejudiced by a three-month stay for an investigation of West's competency to waive any federal habeas proceeding, after the state court proceedings have taken fourteen years to conclude. For the reasons stated above, I would affirm the district court's decision to stay West's execution so that his competency to waive federal habeas relief may be investigated.

distinguished *Steffen v. Tate*, 39 F.3d 622 (6th Cir. 1994), in which this court refused to permit a federal district court to stay an execution under the *McFarland* rule when the prisoner is able and ready though unwilling, for strategic reasons, to file a habeas petition. After noting that West has a right to decline to pursue federal habeas relief, Judge Collier declared that "[h]e also has a federal statutory right to a one-year period within which to make up his mind whether he wishes to pursue those remedies." Judge Collier reasoned that, under *McFarland*, a federal court "may accept jurisdiction to preserve, in a meaningful way, Petitioner's federal statutory rights." Judge Collier did not make any findings of fact in connection with his ruling, instead stating:

> Finally, the Court notes under most circumstances, as a society we assume a fully competent individual would wish to pursue every avenue of relief available to avoid execution. The fact West does not, when viewed in light of [evidence that West may be vacillating in his decision and perceives some of his treatment during incarceration as retaliatory] raises some concerns about his mental facility [sic]. Moreover when specifically asked whether he wished to pursue these avenues, instead [of] affirmatively saying "yes" or "no," he refused to respond. This also raised some concern about whether West has made his decision with full knowledge and understanding of the consequences of that decision. On such a bare record, the Court is reluctant to allow the presently scheduled execution to proceed without an opportunity to determine more accurately West's wishes and present mental condition.

Collier Order at 5. In response to the Warden's argument that the attorneys lacked standing to pursue a *McFarland* stay of execution on West's behalf, Judge Collier resolved, "Based on the suggestion of West's counsel that Petitioner's actions may not be voluntary, and due to the time constraints and limited record before this Court, the Court finds the 'issues concerning this aspect of jurisdiction may be underdeveloped to a degree that the court should exercise caution and treat the

petition as one for which jurisdiction is proper." Collier Order at 6 (quoting *Hamblen v. Dugger*, 719 F. Supp. 1051, 1061 (M.D. Fla. 1989)). Judge Collier entered a stay of execution and scheduled an evidentiary hearing on West's competence to waive his right to seek federal habeas for June 13, 2001. The Warden promptly filed in this court a "Motion to Vacate Order of District Court Appointing Counsel and Staying Execution . . . ."

Upon consideration of the papers, we hold that the stay of execution must be vacated. There is no proper proceeding before the district court that would permit the entering of a stay of execution. West has not brought such an action, and no one has qualified to so move on his behalf.

West is styled in the papers as the "petitioner," although the papers are being filed, without his consent, by certain private lawyers who previously represented him. They will be referred to interchangeably as "counsel" and "putative next friends"; West, in his possible general interest in the proceeding will be referred to as "petitioner."

The fundamental principle here is that federal courts are courts of limited jurisdiction. They are not generalized overseers of the state court systems, not even in death penalty cases. *Rickman v. Bell*, 131 F.3d 1150, 1165 (6th Cir. 1997). Petitioner's fundamental error is shown in the many references in the papers to West's waiving his appellate rights." We do not have general appeal jurisdiction over the Tennessee courts. Petitioner must invoke our jurisdiction, not simply fail to waive it.

There is no question that West can invoke the jurisdiction of the federal courts by filing a petition for habeas corpus. 28 U.S.C. § 2254. He has not chosen to do so. How, then, can a federal court get involved in this case? Supreme Court case law tells us that a "next friend" may sue in place of a death-sentenced prisoner only when that person clearly shows that the prisoner is not competent. *Whitmore v. Arkansas*, 495 U.S. 149, 164-66 (1990); *Rees v. Peyton*, 384 U.S. 312, 314 (1966). Those holdings were in the context of cases where a

this case, I conclude that the district court did not abuse its discretion in granting a stay of execution, as it had the authority to do so to permit the resolution of the mental competence of West. *See also Felker v. Turpin*, 517 U.S. 1182 (1996) (Supreme Court granted temporary stay of execution to allow time to consider whether it had jurisdiction).

It is true that neither West nor his counsel has filed as yet a petition for federal habeas corpus. However, by filing a motion for appointment as counsel to assure that West's mental competency to waive his federal habeas rights is investigated and evaluated, defense counsel have in effect triggered the protections of 21 U.S.C. § 848(q)(4)(B). As explained by the Supreme Court in *McFarland v. Scott*, 512 U.S. 849 (1994), a federal habeas "'post-conviction proceeding' within the meaning of § 848(q)(4)(B) is commenced by the filing of a death row defendant's motion requesting the appointment of counsel for his federal habeas corpus proceeding." *Id.* at 856. Where West's competency is in question, defense counsel's motion to be appointed as counsel to investigate West's competency regarding the filing of a federal habeas petition is similarly within the scope of § 848(q)(4)(B) as interpreted by the Supreme Court in *McFarland*. And, as in *McFarland*, only if the stay of West's execution is continued can West's rights to a counseled habeas corpus petition under § 848(q)(4)(B) be protected.

## IV.

In sum, I conclude that the district court's decision to grant a stay of execution until June 15, 2001 did not constitute an abuse of discretion. To determine otherwise would create an avenue by which incompetent defendants may waive their rights to federal habeas relief without a judicial determination of whether such waiver was knowing, intelligent, competent, and voluntary. Moreover, the district court granted a limited stay only, giving defense counsel until June 15, 2001 to investigate West's competence, a date which in essence is

West is entitled to a hearing on his competency before his purported decision to waive a federal habeas proceeding is deemed competent.

## III.

Finally, the district court did not abuse its discretion in granting a stay because it had the authority to grant a stay to determine the propriety of its jurisdiction. A federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established. When potential jurisdiction exists, a federal court may issue orders preserving the status quo to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it. *See* 28 U.S.C. § 1651 ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to usages and principles of law."). *See, e. g., FTC v. Dean Foods Co.*, 384 U.S. 597, 603-05 (1966).

This circuit's decision in *Steffen v. Tate*, 39 F.3d 622, 625 (6th Cir. 1994), is inapposite here. Unlike *Steffen*, this case concerns a stay of execution to allow for an investigation of a defendant's competency, not to pursue allegedly "novel and newly available state remedies beyond a direct appeal and a post-conviction proceeding, both of which . . . [had] already been enjoyed." *Steffen*, 39 F.3d at 623. Indeed, this case is almost exactly parallel to *Rees*. In *Rees*, the defendant there "directed his counsel to withdraw his [federal habeas corpus] petition and forgo any further legal proceedings." *Rees*, 384 U.S. at 313. While noting that resolution of the defendant's mental competence was of prime importance, the Supreme Court retained jurisdiction over the case and "determined that, in aid of the proper exercise of [its] certiorari jurisdiction, the Federal District Court in which [the] proceeding commenced should upon due notice to the state and all other interested parties make a judicial determination as to Rees' mental competence and render a report on the matter to us." *Id.* at 313-14. In light of the striking similarities between *Rees* and

prisoner sought to withdraw proceedings already pending in federal court, where the court clearly had jurisdiction to consider the withdrawal.

In the rarer cases where there has been a failure to take any action in federal court, the basic principles have been the same. *Harper v. Parker*, 177 F.3d 567, 572 (6th Cir. 1999). *See also Lonchar v. Thomas*, 58 F.3d 588, 589 (11th Cir. 1995); *Brewer v. Lewis*, 989 F.2d 1021, 1025-26 (9th Cir. 1993); *Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985). From these cases, it is clear that the burden is still on the putative "next friend" to demonstrate, not simply assert, the incompetence of the prisoner.

In our case, this clearly did not happen. At most, counsel have shown some conceivable difficulties in West's mental health, but no evidence that, in the words of *Rees*, the prisoner does not have "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or . . . suffer[s] from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees*, 384 U.S. at 314.

Here, counsel disclaim that they are seeking, or have obtained, next friend status. Opposition to Motion to Vacate, at 10, n. 6. They seek simply to have West's execution stayed so that they may, apparently, undertake the process of qualifying as next friend, so that they can then contemplate the process of filing a petition for habeas corpus on West's behalf. There is no authority for such a process. *McFarland* applies, at most, to a prisoner's seeking counsel to file a habeas, or, perhaps, a qualified next friend seeking time to prepare a habeas petition. *In re Parker*, 49 F.3d 204, 208-11 (6th Cir. 1993). Counsel have not pled or proved their entitlement under this provision.

Viewed on the merits, the basis of a grant of such status would be tenuous. Counsel have made many claims in their briefs before us, but they presented little evidence before the district court. Some material presented to us was docketed in the district court, but only minutes before Judge Collier

actually ruled, and there is no indication in the judge's order or in the record that he considered such material.

West was examined in 1986 and found competent to stand trial. He was examined extensively in 1995 in connection with his post-conviction processes, finding him to be of average or above average intelligence, though with some difficulties Mr. West is typically quite passive, detached, avoidant, and almost schizoid. Mr. West is an individual who is subject to periods of detachment, depersonalization, and identity diffusion, particularly when under extreme stress. That material was available to the lawyers, and some was submitted with the briefing in this court. There is no indication that the lawyers sought to have any current examination done in advance of filing this petition, or whether West did or would have objected to such an examination.

The timing of this petition shows that it is not the State of Tennessee that is seeking to manipulate the time constraints of the law. After the Tennessee Supreme Court denied a petition for rehearing on June 7, 2000, in West's appeal of the denial of post-conviction relief, West did not seek certiorari. Counsel should have known that a potential problem with West's willingness to seek federal court review existed at that time. Tennessee did not set an execution date for five more months, and then set that date 113 days in the future. Knowing that West had still not authorized any habeas petition, the putative next fiends were certainly on notice that time was running. Even when West, on February 13, took the unusual step of affirmatively choosing death by electrocution (lethal injection is the default option in Tennessee), counsel still did nothing. Only on February 20, less than nine days before the scheduled execution, did counsel seek to raise before the federal courts a desire to investigate West's competence to make his own decisions.

This history contrasts starkly with the actions of counsel in our somewhat comparable case of *Harper*, 177 F.3d at 568-69. There, counsel moved for next friend status in federal

## II.

Furthermore, I conclude that defense counsel also has standing to assert West's statutory right to a one-year period in which to file a federal habeas corpus petition. Section 2254 provides West with a statutory right to file a federal habeas corpus petition. Under 28 U.S.C. § 2244(d), West has one year from the date of entry of final judgment of his application for state post-conviction review in which to file a federal habeas corpus petition. West has never explicitly waived this right. Instead, he has refused to say anything. Absent a clear determination of voluntary waiver, further development of the record is needed to determine whether West indeed wishes to waive his right to file a federal habeas corpus petition and understands the full consequences of such action.

In this case, defense counsel presented evidence that suggests that West may not be competent. "[O]nce [his] competence was put in issue, [West] could not waive his right to have his competence determined." *Harper*, 177 F.3d at 571 (citing *Pate v. Robinson*, 383 U.S. 375 (1966)); *Mata v. Johnson*, 210 F.3d 324, 329-330 (5th Cir. 2000) ("[W]e conclude that a habeas court must conduct an inquiry into a defendant's mental capacity, either *sua sponte* or in response to a motion by petitioner's counsel, if the evidence raises a bona fide doubt as to his competency."). In other words, given West's questionable mental state, only defense counsel can assert West's statutory right to file a habeas petition. To deny defense counsel the opportunity to investigate West's mental condition because of a lack of conclusive evidence regarding such condition would create a Catch-22 situation, in which an actually incompetent defendant, who has not yet been evaluated for his competency to forego further legal proceedings, could preclude a review of his ability to waive his legal rights intelligently and competently by simply declaring a desire not to seek federal habeas corpus relief. Completely unlike *Harper*, there has not yet been an evidentiary hearing to determine whether there is reasonable cause to believe West may be incompetent. As in *Harper*,

overturned, and he does not want to live out his natural life in prison." *Harper*, 177 F.3d at 570.

Furthermore, this case is unlike *Demosthenes*, where the state courts had previously determined that the defendant was competent to forego his rights just a week before the persons seeking "next friend" standing brought a petition for habeas corpus. In this case, there is no state court determination of West's competency to waive his right to file a federal habeas corpus petition. There is only the state court's determination in 1986 that West was competent to stand trial. In light of the evidence of West's questionable mental state as presented by defense counsel, such determination is of little value, especially since it was reached more than fourteen years ago.

In sum, given West's failure to explain his reasons for not proceeding to file a habeas petition and the evidence concerning West's history of mental disorders, his vacillation with regard to his desire to live and to seek habeas relief, and alleged maltreatment of West by prison officials, I believe that defense counsel has demonstrated reasonable cause for the court to believe that West may be mentally incompetent and therefore cannot appear on his own behalf.

### B.

Second, defense counsel has demonstrated that defense counsel is acting within the best interests of West, having previously represented West in his state post-conviction proceedings. In fact, Bell does not contest defense counsel's ability to establish this factor.

Defense counsel therefore properly can act as West's next friend in pursuing an investigation of West's competence to decide whether to waive his right to file a federal habeas corpus petition. Although defense counsel claims not to seek "next friend" standing at this time, defense counsel's arguments cannot be construed otherwise. Defense counsel is clearly acting as a next friend in asserting West's interests in investigating and holding a hearing to determine the competency and voluntariness of West's decisions.

court 8 days after the denial of certiorari after the termination of state post-conviction processes. This was even before an execution date had been set. Seven days later, Kentucky set an execution date only 35 days in the future. Counsel pressed their motion, and within two days the district court began proceedings to determine, in accordance with *Whitmore*, whether next friend status should be given. It is not Tennessee that has caused this case to be handled on a very tight schedule, nor is it Tennessee who chose what evidence to present and when.

It may properly be noted that in *Harper* the prisoner had affirmatively stated, by letter and then in open court, that he did not wish to pursue any further court proceedings. But that only goes to the substantive correctness of the district court's decision there, not to the standards to be applied or the burden on those who purport to speak for West.

It is true that West has not affirmatively waived any rights. However, he never invoked the right to file a habeas so that it would be necessary to waive it. Unless the standards of *Whitmore* are met, West is entitled to be free from being dragged about for mental examinations, hearings, and the like, in processes that he has not invoked, even if purportedly for his benefit. Finally, it should be noted that neither statute nor case law indicate that AEDPA gives a death-sentenced prisoner a free one-year period in which state execution processes cannot touch him. If this argument were correct, an extension of AEDPA's window to 2 years (which some have argued for) would concomitantly act as a stay of execution for the 2 years, and the pre-AEDPA rule that a habeas could be filed at any time would have meant that a prisoner could never be executed, because it might cut off a prospective future habeas filing. There simply is no such rule.

It is true that this case occasions some unease. It is conceivable that West has a meritorious habeas claim, should he wish to bring it. There are some factors in West's record that could conceivably support a claim of incompetence, though the books are replete with cases where stronger

claims, with histories of depression, suicidal attempts, and bad childhoods have been found insufficient (*See, e.g., Harper*, 177 F.3d at 569-70; *Rumbaugh*, 753 F.2d at 397; *see also Hamilton v. Texas*, 497 U.S. 1016, 1019 n. * (1990) (Brennan & Marshall, JJ., dissenting); *Demosthenes v. Baal*, 495 U.S. 731, 740 (1990) (Brennan & Marshall, JJ., dissenting); *Schornhorst v. Anderson*, 77 F. Supp. 2d 944, 953 (S.D. Ind. 1999)).   But these facts cannot provide what petitioner has failed to provide -- a jurisdictional basis for us to assume control of the state's processes.  In the absence of an adequate finding of incompetence, West is a responsible human being entitled to enter or stay out of federal court. Even at this late hour, he need only choose to invoke the court's jurisdiction and it will attach.

However, contrary to Judge Collier's statement that, "as a society we assume a fully competent individual would wish to pursue every avenue . . . to avoid execution," an infinite desire to thwart the just processes of the law is not the only sign of mental competence.  We must not assume that it is impossible for even a death-sentenced prisoner to recognize the justice of his sentence and to acquiesce in it.  If there is a case to the contrary, under our precedents it is up to the putative next friends to make that case.  They have not done so, and the district court erred in granting a stay without the jurisdiction prerequisites necessary for that action.

The stay of execution granted on February 23 is vacated, and the underlying proceeding should be dismissed as there is no one with standing to proceed with it.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green
_____
Clerk

---

THE COURT:  I'll let you reflect on that a minute.  I'll ask you again in a moment while I gather my thoughts.

*Now, Mr. West, it would be helpful to the court if you would be willing to indicate if you want counsel appointed to represent you or not, and whether you want a stay of your execution that's set for March 1, 2001, or not.*  If you do not wish to speak to the court, that's certainly your right, but it would be helpful and informative for the court to make an informed decision.

And I invite you, if you would like to, to step up to the podium and tell me whatever you have on your mind and what you want to say about this particular proceeding or anything related to it.

Is there anything you would like to say?

PETITIONER WEST:  No, sir.

Tr. at 28-29 (emphasis added).  West did *not* express a desire to forego filing a habeas petition and made no statement that demonstrated an understanding of the consequences of choosing not to seek federal habeas corpus relief.  In fact, West's behavior at this hearing was unlike the defendants in *Whitmore* and *Harper v. Parker*, 177 F.3d 567 (6th Cir.), *cert. denied*, 526 U.S. 1141 (1999), who were determined to be competent to forego further legal proceedings.  Unlike West, in *Whitmore* the defendant answered questions in a manner that demonstrated that he appreciated the consequences of his decision.  For instance, "[h]e indicated that he understood several possible grounds for appeal, which had been explained to him by counsel, but informed the court that he was 'not seeking any technicalities,'" and "[i]n a psychiatric interview, [the defendant in *Whitmore*] stated that he would consider it 'a terrible miscarriage of justice for a person to kill people and not be executed.'"  *Whitmore*, 495 U.S. at 165-66. Likewise, the defendant in *Harper* "explicitly proclaimed that he seeks to end this litigation because he does not believe that he has any realistic chance of having his conviction

West told her he did not want to die, a statement that clearly contradicts any decision to forego any chance to seek federal habeas corpus relief. Indeed, in her affidavit, Donnovin states that, after informing her of the retaliation he was experiencing in prison, West told her "he believes that he has good arguments on appeal, but that he does not want to live under the current conditions in prison." Donnovin Aff., ¶ 19; *see also* Harris Aff., ¶ 6 (same). Additionally, Jerry Wellborn, a chaplain who has visited West in his prison facility since 1989, declared in his affidavit that West "told [him] he did not wish to die. . . . He emphasized he wanted to live but had nothing to loose[sic] and that living is not worth the inhumane treatment and reprisals he was experiencing." Wellborn Aff., ¶¶ 5-6. Moreover, defense counsel presented an affidavit from Daniel G. Matthews, a minister and spiritual counselor to West for fifteen years, who asserted that West was experiencing retaliation in his correctional facility that left him "destroyed emotionally, spiritually, and physically." Matthews Aff., ¶ 15; *see also Comer v. Stewart*, 215 F.3d 910, 918 (9th Cir. 2000) (noting that oppressive prison conditions may adversely affect a person's mental health).

Finally, defense counsel provided the district court with a transcript of the proceedings before the district court in the Middle District of Tennessee. As the transcript reveals, during these proceedings, when specifically asked if he wanted appointed counsel or if he wanted a stay of execution, West refused to respond, thereby failing to make an explicit and clear waiver of his right to file a habeas petition. The colloquy was as follows:

THE COURT:  All right.  Mr. West, I would like to address you personally.  Would you like to speak to the court?

PETITIONER WEST:  No, sir.

THE COURT:  Are you sure?

PETITIONER WEST:  (No audible response.)

KAREN NELSON MOORE, Circuit Judge, dissenting.  In 1986, Petitioner-Appellee, Stephen Michael West ("West"), was convicted of the first-degree premeditated murders of Wanda and Sheila Romines in the Criminal Court of Union County, Tennessee and was sentenced to death for each murder.  Following his conviction, West challenged his conviction and sentence in the Tennessee state courts, both through direct appeal and post-conviction proceedings, exhausting all of his state remedies on June 7, 2000, when the Tennessee Supreme Court denied rehearing on its decision to affirm the Tennessee Court of Criminal Appeals' decision denying West post-conviction relief.  On November 7, 2000, the Tennessee Supreme Court then entered an order setting West's execution for March 1, 2001, a date more than three months before West's limitations period for filing a federal habeas corpus petition under 28 U.S.C. § 2254 would expire. 28 U.S.C. § 2244(d).

On February 20, 2001, Roger W. Dickson, William Harris, and Elisabeth Donnovin (hereinafter referred to as "defense counsel"), who had previously represented West in his state post-conviction proceedings, filed a motion in the United States District Court for the Middle District of Tennessee for appointment as counsel for West and a motion to stay West's execution to allow them to conduct an investigation into his apparent refusal to allow counsel to file a federal habeas corpus petition for him.  On February 21, 2001, after holding a hearing at which West was present and was invited to participate, a federal district judge in the Middle District of Tennessee granted defense counsel's motion for appointment of counsel and further authorized such counsel to retain a mental health expert to evaluate West, but refrained from ruling on defense counsel's motion to stay the execution. The district judge transferred the case to the United States District Court for the Eastern District of Tennessee. On February 23, 2001, a federal district judge in the Eastern District of Tennessee granted defense counsel's motion for a stay of execution after holding a telephone conference on the motion.

Respondent-Appellant, Warden Ricky Bell ("Bell"), now appeals "from the order staying petitioner's execution set for 1:00 a.m. CST, 1 March 2001, entered in this action on the 23rd day of February, 2001." For the following reasons, I would affirm the district court's stay of execution.

### I.

Bell argues that this court should vacate the district court's stay of execution because defense counsel lacks standing to invoke the jurisdiction of the federal courts. I disagree. Instead, I believe that defense counsel can assert rights for West as a next friend.

To obtain "next friend" standing, one must bear the burden of establishing two requirements. First, one "must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action." *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990); *Demosthenes v. Baal*, 495 U.S. 731, 734 (1990). Second, one "must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Whitmore*, 495 U.S. at 163. In this case, defense counsel has successfully satisfied both of these factors.

### A.

First, defense counsel has satisfied the initial requirement for obtaining "next friend" status by providing the district court with reasonable cause to believe that West is incompetent to make a decision to forego filing a federal habeas corpus petition. In *Rees v. Peyton*, 384 U.S. 312 (1966), the Supreme Court held that a defendant may not forego his rights to pursue further habeas proceedings unless he has the "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Id.* at 314. Defense counsel has presented numerous pieces of evidence

indicating that West may lack the capacity to make a rational choice to abandon his right to file a federal habeas corpus application.

To begin, defense counsel alerted the district court to the record in the state court, which is replete with evidence of West's history of emotional disturbance and mental problems. For example, this record contains the report of Dr. Eric Engum, a clinical psychologist, who conducted a two-hour evaluation of West in December 1995 and determined that West suffered from depression, mixed personality disorder, and extreme emotional disturbance, and that West had a lot of anger resulting from earlier childhood experiences. *West v. State*, No. 03C01-9708-CR-00321, 1998 WL 309090, at *1 (Tenn. Ct. of Crim. App. Jun. 12, 1998). Indeed, Dr. Engum noted that "[u]nder extreme levels of stress . . . West may, in fact, experience brief temporary psychotic breaks." Engum Aff., ¶ 4. The record also contains testimony from West's sisters Debbie and Patricia and his aunt Ruby, who detailed instances of violent abuse suffered by West. *West v. State*, 1998 WL 309090 at *2, 5. Additionally, defense counsel provided an affidavit from Dr. Keith Caruso, a psychiatrist who concluded that more time was needed fully to evaluate West's competency and that West's purported decision to not to seek federal habeas corpus relief "may be driven by psychotic thought processes or suicidal inclinations that are driven by an underlying severe mental illness." Caruso Aff., ¶ 21. In so doing, Caruso pointed out that West may have a genetic predisposition to mental illness; that the development of schizoid, paranoid, and borderline pathology have all been noted in West; and that West's decision not to seek federal habeas corpus relief "does not follow logically with his scheduled marriage seven days after the date of his anticipated execution." Caruso Aff., ¶¶ 14, 19-21.

Also, defense counsel presented evidence detailing acts of alleged retaliation against West in prison and the impact that such retaliation was having on West's emotional and mental state. For example, Donnovin, one of West's post-conviction attorneys, submitted an affidavit in which she proclaimed that