ROGERS, J.,
dissenting.
Today the court allows habeas petitioners to prevent States from enforcing their judgments, potentially forever, on the grounds of a nonexistent right to competency in habeas proceedings. The asserted right has no basis in the Constitution or federal statutes. Civil suits can be brought by lawyers representing mentally incompetent plaintiffs, and habeas cases are no different. Nor are capital cases different in this respect.
First of all, the Constitution, in a point conceded by the majority and all but admitted by Carter’s counsel during oral argument, does not provide a right to competency in habeas proceedings. As the Supreme Court explained in United States v. MacCollom, 426 U.S. 317, 323, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976), due process “certainly does not establish any right to collaterally attack a final judgment of conviction.” Moreover, the Court held in Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), that there is no constitutional right to counsel for habeas proceedings. If Carter has no constitutional right to a habeas proceeding in the first place, and has no constitutional right to counsel at that proceeding, he logically cannot have the right to be competent so as to communicate with and/or assist counsel during his habeas proceeding. This conclusion is buttressed by Whitmore v. Arkansas, 495 U.S. 149, 162-64, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), in which the Supreme Court explicitly recognized that a “next friend” can be appointed to initiate and pursue claims on behalf of a habeas petitioner who is mentally incapacitated. If the law permits a *338 next friend to be appointed in order to prosecute the claims of an incompetent habeas petitioner, it cannot also require that a petitioner’s habeas proceeding be indefinitely stayed if a court deems the petitioner incompetent.
This case does not involve the separate right of a condemned prisoner to be competent at the time of execution. See Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). That right has to do with the nature of the punishment, and little to do with whether a habeas petition can proceed in order to determine whether the petitioner has been constitutionally convicted.
This case also does not involve the constitutional right to competency during the trial itself. See e.g., Cooper v. Oklahoma, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). There is a world of difference between trial and collateral attack. Assisting counsel in one’s defense at trial is one thing, where the central issue is whether or not the defendant is guilty, and where counsel is constitutionally required. Assisting one’s counsel in a habeas petition is another thing, where the central issue is whether the defendant’s constitutional rights were violated, and due process does not even require that counsel be provided.
The Constitution thus does not provide that capital habeas petitions be stayed as long as the petitioner is not competent.
There is also no statutory basis for such a conclusion. Rees v. Peyton (Rees I), 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), cited by the majority, cannot be read to extend a statutory right to competency to the circumstances of the instant case. In Rees, the district court rejected a death row inmate’s habeas petition, the court of appeals affirmed, and the inmate’s counsel then filed a petition for certiorari with the Supreme Court. Id. at 312-13, 86 S.Ct. 1505. Soon after, the inmate directed his counsel to withdraw his petition for certiorari. Id. at 313, 86 S.Ct. 1505. The Court ordered the district court to conduct a competency determination of the inmate and retained jurisdiction of the certiorari petition pending the results of the hearing. Id. at 314, 86 S.Ct. 1505. Following a hearing in which the district court found the inmate incompetent, the Supreme Court issued a summary order stating, “This case is held without action on the petition until further order of the Court.” Rees v. Peyton (Rees II), 386 U.S. 989, 87 S.Ct. 1310, 18 L.Ed.2d 333 (1967). This court also applied Rees in Harper v. Parker, 177 F.3d 567, 571 (6th Cir.1999), where we held that district courts may conduct preliminary hearings to determine “whether there was ‘reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent’ to waive his right to further appeals.” Id. (quoting 18 U.S.C. § 4241).
Thus, Rees and Harper plausibly stand for the proposition that habeas petitioners must be competent in order to terminate a habeas proceeding. They do not stand for the very different proposition that habeas petitioners must be competent to assist counsel in the prosecution of their habeas petition. The distinction is crucial. When a habeas petitioner seeks to withdraw his habeas petition, he is choosing to end what is likely to be his only chance at reversing his conviction and regaining his freedom. This is a decision inherently to be made by the petitioner, and not while the petitioner is incompetent to do so. When a habeas petitioner files his petition and then becomes incompetent to assist his counsel in prosecuting it, however, there is no comparable client decision to be made.
Stated differently, the Rees precedent can be read to create an assumption that a habeas challenge to a death penalty will go *339 forward unless the petitioner competently terminates it. Such an assumption cannot logically require that the habeas proceeding will not go on — or indeed that it will be resolved in petitioner’s favor — merely because the petitioner is not competent to terminate it.
The statute referred to by the Supreme Court in Rees, 18 U.S.C. § 4241, provides for competency hearings for defendants in criminal proceedings, and cannot be read to extend to post-conviction proceedings. The Supreme Court took the standard from that statute and adopted it for the purpose of determining whether the habeas petitioner in Rees was competent to terminate the habeas proceedings. The Court’s adoption of the statutory standard for one required inquiry (competency to terminate proceedings) does not logically imply that another inquiry (competency to assist habeas counsel) needs to be made in the first place. Notably, the Ninth Circuit, in its lengthy opinion holding that incompetent habeas petitioners are entitled to a stay, does not rely on § 4241 as so providing. Rohan ex rel. Gates v. Woodford, 334 F.3d 803 (9th Cir.2003).
Instead, the Ninth Circuit’s holding is based on a different statute, one upon which the majority in this case wisely declines to rely. In Rohan, the district court held a competency hearing for a death row habeas petitioner and concluded that the petitioner was incompetent. Id. at 806. Nonetheless, the district court went on to deny the petitioner’s request for a stay of his habeas proceedings, holding that neither the Constitution nor the federal habeas statutes required that the proceedings be stayed, because the appointment of a “next friend” adequately protected the petitioner’s interests. Id. The Ninth Circuit reversed. The Ninth Circuit interpreted 21 U.S.C. § 848(q)(4)(B) (now recodified as 18 U.S.C. § 3599(a)(2)), which provides for appointed counsel in death penalty habeas proceedings, as implying a right to “meaningful” assistance of counsel, which itself depends on the petitioner’s ability to communicate rationally with counsel. Id. at 812-13. Hence, concluded the Ninth Circuit, Congress meant (though it never said) that a habeas petitioner has the right to be competent during his habeas proceedings. Id. at 813.
But the plain language of the statute provides for no such right, and none is ever mentioned. Instead, Congress provided a detailed list of instructions and specifications governing appointed counsel’s qualifications and experience in capital habeas proceedings. See 18 U.S.C. § 3599(b)-(e). These provisions in no way speak to the actual effectiveness of counsel’s performance during a habeas proceeding, they simply prescribe a minimum level of background knowledge for appointed counsel. In particular, they say nothing about the competency of the petitioner.
The Rohan court relied in part on the implication of a right to competency from a right to counsel from other contexts, such as the constitutional right to competency at trial. Rohan, 334 F.3d at 813. But trial and post-conviction proceedings are different, and in any event the inference as a statutory matter is directly contradicted by a specific statutory provision. AEDPA forecloses claims on collateral attack for ineffective assistance of habeas counsel: “The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.” 28 U.S.C. § 2254(i); see Benner v. Coyle, No. 99-3570, 1999 WL 33453848, at *1 (6th Cir. Nov.l, 1999). If an underlying right to effective assistance of habeas counsel cannot be implied from 18 U.S.C. § 3599, then the derivative right to be competent in habeas proceedings so *340 as to assist counsel cannot be implied either.
There is in short no legal basis whatsoever for inferring a right to competency of the petitioner in habeas proceedings. It is a right created out of whole cloth.
It is also a right that is anomalous in its very nature. For practical purposes, the right will be asserted by capital petitioners but not by other petitioners. Capital petitioners gain something (delaying execution) from indefinitely delaying habeas proceedings, while the interests of convicts serving prison terms — whether competent or not — will almost always be served by the prompt litigation of habeas petitions, so as to advance the possibility of release. But acceptance of the right in concept might well require that it be applied to noncapital cases, where prosecutors could insist that habeas be indefinitely delayed. One might argue that noncapital defendants may waive the right, but by hypothesis such defendants are incompetent, and thus might be incapable of waiving the right. So recognition of a right to competency in habeas proceedings means either that prosecutors can for practical purposes insist on indefinite postponement of habeas proceedings where convicts are not competent (a counterintuitive result), or that the difference in punishment — capital vs. non-capital — somehow fundamentally changes the nature of how much a lawyer must have input from the client, such that the right is categorically available only for capital convicts (an anomalous result).
It is also anomalous to have a system in which a civil litigant can go into court and instantly get the relief he seeks merely by showing that he is incompetent. In civil cases in our system, a plaintiff has to show a basis for relief, not merely that he is disabled from making such a showing. While habeas cases deal with criminal convictions, they are at bottom civil cases.
Finally, the very ways in which competency is said to be necessary for habeas petitioners would apply just as strongly to the competency of witnesses in habeas proceedings. A key witness in a habeas proceeding — one whose input or testimony might make all the difference — might become incompetent or be unable to testify. But no one would argue that a habeas proceeding therefore could not proceed. The parties just have to do the best that is possible with the witnesses and testimony that are available, subject to the rules of evidence.
These concerns are reflected in the facts of this case. Although the district court found that several of Carter’s habeas claims could potentially benefit from his assistance, at least three of these claims plainly do not require any input from Carter for their successful prosecution. Thus, even recognizing a right to competency does not prevent the district court from resolving the merits of at least these habeas claims. These include Carter’s claims that: (1) he was incompetent to stand trial; (2) his trial counsel was ineffective for failing to pursue the issue of his competency; and (8) his appellate counsel was ineffective for not appealing the trial court’s failure to ensure that he was competent. As for the first of these three claims, Carter’s competency is a question of fact, see Thompson v. Keohane, 516 U.S. 99, 111, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), and he has the burden of rebutting the presumption that the state court’s factual findings were correct, see 28 U.S.C. § 2254(e)(1); McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir.2004). Carter’s competency claim thus depends entirely on the evidence available to the state trial court. The trial court in this case held two competency hearings before trial and found Carter competent after both. Carter’s counsel can, as they have already done in *341 his habeas petition, point out any errors in the trial court’s assessment of Carter’s competency so as to prove that the state-court decision was contrary to or an unreasonable application of federal law or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). They can clearly do so without the need for information available only to Carter.
The same is true for the other two claims. As noted, the record for this case already contains extensive evidence concerning Carter’s competency. The record also sufficiently reflects Carter’s trial counsel’s efforts to prove that he was incompetent and how his appellate counsel handled the competency issue on appeal. No information available only to Carter would alter the merits of these claims for purposes of the habeas standard. Perhaps recognizing this, the majority fashions the particularly anomalous remedy of remanding the case in part, for the district court to identify those claims that do not require Carter’s assistance and then to appoint a next friend to litigate those claims on Carter’s behalf. This “remedy,” however, necessarily has the incongruous effect of staying part of the case indefinitely while allowing another part of the case to go forward, with the scope of the latter part to be determined wholly by the district court. This compounds the hobbling of the State’s legitimate interests in finality and execution of its judgments.
Two of the remaining claims identified by the district court — Carter’s removal from the trial proceedings and the ineffective assistance of his trial counsel during mitigation — could potentially benefit from Carter’s assistance. In the first place, it is questionable whether, under the evidentiary limitations imposed by AEDPA, Carter’s counsel could introduce new evidence on habeas review in support of these claims, even if Carter were competent.[1] More fundamentally, however, any assistance that Carter could give would be conceptually indistinguishable from that of a witness. The assistance, if any, from Carter would be the provision of information that could be used to support the claims. But that is exactly what a witness provides. The incompetency of witnesses *342 does not stop civil proceedings, and it is anomalous that the incompetency of a plaintiff should stop proceedings entirely because the party cannot act as a witness.
Requiring competency on the part of capital habeas petitioners is not compelled by the right to competency at trial, the right to competency in waiving further habeas proceedings, or the right to be competent at the time of execution. The new “right” is not provided by either the Constitution or any statute. It is instead an anomalous monkey wrench thrown into the capital-litigation process.
The district court’s order should be reversed, and the case remanded in full so that the habeas proceeding can go forward on all of Carter’s claims.

. For the claim concerning Carter’s removal from the trial proceedings, Carter first raised this as an instance of ineffective assistance of appellate counsel in his Ohio Rule of Appellate Procedure 26(B) application to reopen his direct appeal. Carter’s Rule 26(B) application, however, did not include an affidavit from Carter concerning whether he wanted to be in the courtroom for his trial and sentencing. Under the Ohio Rules, Carter's application to reopen his direct appeal needed to contain a sworn statement of the basis for his claim of ineffective assistance of appellate counsel, any parts of the record available to him, and all supplemental affidavits upon which he relied. Ohio R.App. P. 26(B)(2); Morgan v. Eads, 104 Ohio St.3d 142, 818 N.E.2d 1157, 1159 (2004). Ohio courts hold that the failure to support an in effective-assistance-of-appellate-counsel claim with material outside the record is grounds for dismissal of a Rule 26(B) application. See State v. Griffie, 74 Ohio St.3d 332, 658 N.E.2d 764, 765 (1996); State v. Dillon, 74 Ohio St.3d 166, 657 N.E.2d 273, 277 (1995). Carter therefore failed to develop the factual basis for his removal-from-trial claim, and the claim does not meet the requirements of 28 U.S.C. § 2254(e)(2) since it is not based on a new constitutional right and does not involve evidence that he was actually innocent. See 28 U.S.C. § 2254(e)(2)(A), (B). With respect to his ineffective-assistance-during-mitigation claim, Carter requested an evidentiary hearing when he filed his state post-conviction petition, but he failed to submit any evidentiary documents in support of the claim. See Ohio Rev.Code § 2953.21(C); State v. Jackson, 64 Ohio St.2d 107, 413 N.E.2d 819, 822 (1980). Hence, Carter also failed to develop the factual basis of this claim, and the claim also is not based on a new constitutional right and does not involve evidence that Carter is actually innocent. See 28 U.S.C. § 2254(e)(2)(A), (B).