**Eddie Lee HARPER, Jr., Petitioner–Appellant,**

**v.**

**Phil PARKER, Warden, Respondent–Appellee.**

**No. 99–5686.**

United States Court of Appeals, Sixth Circuit.

Submitted May 22, 1999.

Decided May 24, 1999.

Randall L. Wheeler, Susan M.J. Martin (briefed), Kentucky Capital Litigation Resource Center, Frankfort, Kentucky, for Appellant.

David A. Smith, Dana M. Todd (briefed), Office of the Attorney General, Frankfort, Kentucky, for Appellee.

Before: SILER, BATCHELDER, and MOORE, Circuit Judges.

**OPINION**

BATCHELDER, Circuit Judge.

Edward Lee Harper, Jr., was convicted and sentenced to the death penalty for the 1982 murder of his adoptive parents. Harper had been evaluated by a psychiatrist before trial; based on the psychiatrist's testimony, the trial court found Harper competent to stand trial.

In June 1985, a different psychiatrist, Dr. Richard Edelson, evaluated Harper to determine his competence in response to Harper's stated desire to waive his remaining post-conviction proceedings. Dr. Edelson concluded that Harper was schizophrenic and that he was incompetent to assist in his defense.

The Kentucky Supreme Court affirmed Harper's conviction and death sentence on May 2, 1985, and the United States Supreme Court denied certiorari on June 9, 1986. Harper filed a motion on August 27, 1986, to vacate his conviction and death sentence under Kentucky Rules of Criminal Procedure 11.42; he filed a supplemental motion on June 28, 1996. The trial court denied the motion to vacate the conviction on December 6, 1996. The denial was upheld by the Kentucky Supreme Court on September 3, 1998, and the United States Supreme Court denied certiorari on April 5, 1999. On April 20, 1999, the Governor of Kentucky signed a warrant scheduling Harper's execution for May 25, 1999.

On April 13, 1999, the Kentucky Department of Public Advocacy (DPA), which has

represented Harper since 1982, filed a consolidated motion for Harper to proceed in forma pauperis and requesting pre-petition appointment as federal habeas counsel for Harper. The district court granted the motion for appointment on April 22, 1999.

The Commonwealth of Kentucky filed a memorandum on April 25, 1999, opposing the motion for appointment on the basis that Harper had received the benefit of continuous representation by the DPA throughout his appeal and state post-conviction proceedings. Therefore, Harper was not within the scope of 21 U.S.C. § 848(q)(4)(B). Harper wrote Judge McKinley personally, on April 28th and May 3rd, to express his desire to waive all further proceedings.

On May 5, 1999, the DPA filed a Motion for Stay of Execution and a Motion to Disqualify the Attorney General and the Department of Corrections from participating in Harper's case. The Motion for Stay noted the issue of Harper's competence to waive his habeas corpus remedy, and the possibility that either a habeas petition or a next friend petition would be filed on his behalf.

On May 7, 1999, following a telephonic conference, the district court entered an order setting an evidentiary hearing for May 18, 1999, "to determine if there is reasonable cause to believe that Petitioner is presently suffering from a mental disease or defect rendering him mentally incompetent." At the commencement of the hearing, the court reiterated that the purpose of the hearing was

> to determine if there is reasonable cause to believe that Mr. Harper is incompetent such that we would have to have another hearing about his competency. Mr. Harper has expressed his desires not to proceed with his petition that has been filed. That was communicated to the Court through letters and at a telephonic conference which was held last week sometime. The Department of Public Advocacy wishes to proceed with that petition advocating the position that there is reasonable cause to believe that the petitioner is incompetent and not—does not have the capacity to make that decision, correct?

At the court's request, the DPA then detailed the evidence and testimony it intended to present at the hearing, concluding "I think that what we do have would give you an overview of what could be put on in a full evidentiary hearing."

The evidence presented by the DPA counsel in support of their claim that Mr. Harper is not competent to waive his right to bring a federal habeas action included the testimony of Dr. Edelman, a neuropsychologist, who had examined Harper in 1985 at the request of the DPA when Harper had expressed his desire not to continue his appeals. Dr. Edelman testified that in 1985, he had been asked to determine whether Harper was brain-damaged; that he had reviewed Harper's records, including the records of psychological examinations performed by others, had interviewed Harper, and had concluded that although Harper did not have any brain damage, he was not competent to assist in his own defense, and he was at that time schizophrenic. Dr. Edelman further testified that he had again examined Harper in September 1998, again at the request of the DPA. As a result of that examination, Dr. Edelman concluded that Harper did not evidence brain damage; however, Dr. Edelman further concluded that Harper was neither incompetent nor schizophrenic. Dr. Edelman also testified that he had not been given nor made aware of any specific information relating to the mental health history of Harper's biological family, and that it was possible that information indicating that Harper's biological family had extensive history of depression and other forms of mental illness could have enhanced the accuracy of his findings.

The DPA also presented the testimony of three "mitigation specialists" who had worked on Harper's case, including Valerie Bryan, with whom the DPA claims Harper

is obsessed, as well as the testimony of Ms. Martin, one of the DPA counsel appointed by the district court to represent Harper. Harper himself was given the opportunity to and did cross-examine each of these witnesses. In addition, the DPA presented numerous records, including adoption records of Harper and mental health records of numerous individuals whom the DPA identified as members of Harper's biological family, demonstrating varying types and degrees of mental problems.[1] During the course of the hearing, the DPA renewed their motion, made initially during the telephonic conference, for funds to obtain the evaluation of Harper by an expert; the DPA also orally renewed their earlier filed motion to disqualify both the Attorney General and the Department of Corrections on the ground that attorneys who had been involved in Harper's defense in the state court proceedings were now employees of those offices. The district court deferred ruling on those motions until the close of the hearing.

The State presented the testimony of Ken Thomas, the resident clinical psychologist at the Kentucky State Penitentiary for six years, and Dr. Lloyd Bentley, the institutional psychiatrist at the Penitentiary. Each of these individuals testified to having had recent and current contact with Harper; Thomas testified to having had almost daily contact with Harper over the past several weeks; each of them testified that in their professional opinions, he is competent and that his determination to have counsel discharged and not to proceed with filing an habeas petition is based on his desire not to have to live in prison for the rest of his natural life. Each of these witnesses opined that Harper's decision did not appear to be based on his feelings for any woman or on the loss of privileges resulting from a crackdown on the entire death row population.

The State also presented testimony of the Warden of the Penitentiary and the death row supervisor, neither of whom pretends to be a mental health professional, but both of whom testified to their impressions of Harper over their long acquaintance with him. These witnesses also indicated that Harper is, in their judgment, competent. Harper also questioned each of the State's witnesses.

Finally, the district court permitted Harper to testify on his own behalf. Harper denied that he seeks to end the post-conviction litigation because of his love for Valerie Bryan—although he acknowledged that he does love her—or because he believes that only by agreeing to being executed will he have the opportunity to actually see her once more. He further denied that he seeks to end this litigation because of the loss of his prison privileges. He explicitly proclaimed that he seeks to end this litigation because he does not believe that he has any realistic chance of having his conviction overturned, and he does not want to live out his natural life in prison. Harper also explained that he believed that the DPA had not been honest with him when they convinced him to file the affidavit supporting an application to proceed in forma pauperis, and in their explanation of why he needed to file an habeas petition, and that when he realized that the DPA had not been honest, he sent his letter to Judge McKinley advising that he did not wish to have counsel appointed or to proceed any further with litigation.

At the conclusion of the hearing, the district court ruled that the DPA had failed to present evidence that raised a reasonable doubt about Harper's competence; the court therefore discharged the DPA and dismissed the case.

The DPA brings this appeal, claiming that the district court erred by holding what was, in fact, a full-blown evidentiary hearing on the issue of Harper's compe-

1. Although the district court did not admit into evidence the mental health records of Harper's biological family, the court clearly assumed, as do we, that there is an extensive family history of mental illness.

tence when it had notified the parties that the hearing would be only a preliminary hearing; by failing to give the DPA adequate time to prepare for the hearing; by denying the DPA's motion for funds to obtain an expert examination of Harper; and by denying the DPA's motion to disqualify the Attorney General and the Department of Corrections. For the reasons that follow, we affirm the judgment of the district court.

The State challenges the standing of the DPA to appeal the district court's judgment. We will assume that the DPA has standing; under the authority of *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), once Harper's competence was put in issue, Harper could not waive his right to have his competence determined. Whether we view the DPA as attempting to proceed in the capacity of "next friend" or in the capacity of Harper's appointed counsel, the DPA is the only entity available to pursue an appeal of the district court's judgment.

We address first the claim that the district court erred by ordering a preliminary hearing for the purpose of determining whether there is reasonable cause to believe that Harper is not competent but instead holding a full-blown evidentiary hearing. The short answer is that the district court in fact held only a preliminary hearing. The district court clearly indicated that the purpose of the hearing was to determine whether the DPA had any evidence that would raise a reasonable doubt about Harper's competence, and entitle the DPA to a full evidentiary hearing on the issue. Although the court did not cite to any particular authority for proceeding in this manner, it did indicate at the end of the hearing that it viewed the proceedings as analogous to the federal statutory proceedings for determining competence to stand trial.

We agree that the district court took the correct approach. There is no specific federal statute which controls a case in this procedural posture. The U.S. Supreme Court in *Rees v. Peyton,* 384 U.S. 312, 314, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), recognized that the standard enunciated in 18 U.S.C. § 4241 (formerly § 4244), which determines a defendant's competence to stand trial, also applies in cases where a death row inmate seeks to forego further appeals. Relying on *Rees,* the Fifth Circuit in *Streetman v. Lynaugh,* 835 F.2d 1521 (5th Cir.1988), recognized that in such cases, the standard for reviewing competence is analogous to the standard set forth in 18 U.S.C. §§ 4241–4247, which authorizes a federal district court to order a psychiatric or psychological examination of a defendant whose mental competence is in issue.

> An order under 18 U.S.C. § 4241 requiring psychiatric or psychological examination calls for "'an exercise of judicial discretion to determine if there is "reasonable cause to believe" that the defendant may be incompetent.'" Further, the "determination of reasonable cause is left in large part to the discretion of the district court" and reviewable for "abuse of such discretion."

*Id.* at 1525–26 (footnote omitted); *see also Lenhard v. Wolff,* 603 F.2d 91, 93 (9th Cir.1979) ("Some minimum showing of incompetence must appear before a hearing is necessary.").

Therefore, the district court, relying on *Rees* and *Streetman,* properly held a preliminary hearing to inquire into whether there was "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent" to waive his right to further appeals. *See* 18 U.S.C. § 4241. Unless the district court erred in finding that there was no reasonable cause to believe that Harper was incompetent, the DPA had no statutory right to a full evidentiary hearing on Harper's competence.

We turn next to the district court's "reasonable cause" determination, which we review for abuse of discretion.

*See Streetman,* 835 F.2d at 1526–27; *United States v. Morgan,* 559 F.2d 397, 398 (5th Cir.1977); *United States v. Partin,* 552 F.2d 621, 636 (5th Cir.1977); *see also United States v. McEachern,* 465 F.2d 833, 836–37 (5th Cir.1972) ("In most instances there will be no evidentiary inquiry into the question of reasonable cause."). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *See Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 615 (6th Cir.1995). We find no abuse of discretion here.

To prevail in its claim that Harper is incompetent, the DPA would have to demonstrate that Harper does not have the "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand[,] ... is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees,* 384 U.S. at 314, 86 S.Ct. 1505. The DPA was therefore required to present at the preliminary hearing evidence sufficient to give the district court reasonable cause to believe that Harper either cannot appreciate his position and make a rational choice with regard to continuing to litigate it, or, alternatively, that Harper currently suffers from a mental disease, disorder or defect that may substantially affect his capacity to make that choice. *See Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir.1998).

The district court correctly stated the legal standard, and carefully detailed the evidence that had been presented, concluding that the evidence from the early and mid–1980s that Harper had suffered from mental disease or defect did not raise a reasonable doubt about his current competence, particularly in light of the evidence tending to demonstrate that Harper is competent now. Similarly, the court found that the evidence of mental disease or defect in various members of Harper's biological family did not raise a reasonable doubt about Harper's competence now. The DPA's contention that Harper's decision to forego further litigation is based on his infatuation or obsession with Ms. Bryan, the court found, is speculation and theory and not sufficient to raise a reasonable doubt about Harper's competence. Further, the court explained its reasons for giving considerable weight to Dr. Edelson's testimony that Harper is competent now, and explained its reasons for crediting the testimony of Ken Thomas, who has had almost daily interaction with Harper, and the testimony of the unit supervisor and the warden, who also have had frequent contact with him. Finally, the court explained that Harper's own participation in the hearing convinced the court that Harper is competent and his decision is rational. The court concluded that the evidence indicated that Harper understands the consequences of his decision not to pursue further litigation and that his decision is not the product of coercion or undue pressure. The court concluded

> Now, while perhaps the easiest decision that I could have made is to send you off for further evaluation, I simply have not been shown sufficient evidence or proof to raise a doubt in my mind that you're incompetent. I believe that you are—there's no indication that you are presently suffering from any mental disease, defect, or disorder which substantially affects your ability to make decisions on your own behalf.

The district court's findings of fact are not clearly erroneous and it made no error in its application of the law. Nothing that the DPA presented, singly or in concert, suffices to provide reasonable cause to believe that Harper is not today competent to "appreciate his position and make a rational choice with respect to continuing or abandoning further litigation," *Rees,* 384 U.S. at 314, 86 S.Ct. 1505; neither does any of that evidence suffice to provide reasonable cause to believe that Harper today is "suffering from a mental disease, disorder, or defect which may substantially

affect his capacity in the premises." *Id.* And for these reasons, we conclude as well that the district court's failure to grant the DPA's motion for funds to obtain an expert to examine Harper was not error.

The DPA contends that the district court erred in failing to grant its motion to disqualify the Attorney General and the Department of Corrections. However, Harper explicitly waived any objection he might have to their participation in these proceedings. Because the district court did not err in its conclusion that the DPA failed to provide evidence that Harper is not competent, we conclude that Harper's waiver is effective. We find no error here.

Finally, we address the DPA's motion for a stay of execution. Because we conclude that the district court did not err in the way in which it conducted the preliminary hearing on competence, did not err in its findings of fact with regard to Harper's competence, did not err in failing to appoint another mental health expert to examine Harper with regard to his competence, and did not err in failing to rule on or grant the motion to disqualify the Attorney General and the Department of Corrections, we find no basis upon which a stay of execution may be granted. The DPA has not shown reasonable cause to believe Harper is incompetent. The DPA attorneys have been discharged as his counsel. Harper has not asked for a stay of execution. Accordingly, the motion for a stay of execution is denied.