*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0146p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————————

SEAN CARTER,

        *Petitioner-Appellee,*

    *v.*

MARGARET BRADSHAW,

        *Respondent-Appellant.*

No. 08-4377

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 02-00524—Peter C. Economus, District Judge.

Argued: December 2, 2010

Decided and Filed: May 26, 2011

Before: MARTIN, COLE, and ROGERS, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Linda E. Prucha, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee. **ON BRIEF:** Charles L. Wille, Holly E. LeClair, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Linda E. Prucha, Rachel Troutman, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee.

    MARTIN, J., delivered the opinion of the court, in which COLE, J., joined. ROGERS, J. (pp. 12-18), delivered a separate dissenting opinion.

—————————————

**OPINION**

—————————————

    BOYCE F. MARTIN, JR., Circuit Judge. In this habeas action where petitioner Sean Carter is facing the death penalty according to his Ohio conviction, the district

court found that Carter is incompetent, dismissed his petition without prejudice, and equitably tolled the Antiterrorism and Effective Death Penalty Act statute of limitations prospectively until he is competent to proceed. Respondent Warden Margaret Bradshaw appeals that decision. For the following reasons, we **AMEND** the district court's judgment and **REMAND** the case to the district court for proceedings in accordance with this opinion.

## I.  BACKGROUND

For a full description of the facts of this case, we point to the thorough order of the district court. We detail here only the facts necessary for our discussion. After Carter exhausted the Ohio state review processes for his conviction, he was housed in a facility for prisoners with severe mental illnesses. His attorneys attempted to meet with him there to discuss avenues for collateral appeal, but he refused to see them. Worried that their client was incompetent and choosing to forego further appeals of his conviction and sentence, the attorneys filed Carter's habeas petition and a motion for a pre-petition competency hearing.

The district court held a competency hearing on May 1, 2006 at which experts for both parties agreed that Carter suffered from schizophrenia, personality disorder, and hallucinations. They also agreed that he was not able to fully and articulately communicate with his counsel, but they disagreed as to how well he could assist his counsel in his case. Carter's first expert, Dr. Robert Stinson, opined that Carter lacked a factual understanding of the proceedings. He explained that Carter could not provide details or elaboration, or engage in dialogue. Additionally, he explained that Carter did not believe he could be executed unless he volunteered, and that Carter could not accurately identify his attorneys, instead thinking that Bradshaw's expert, Dr. Phillip Resnick, was his attorney. Carter also called Dr. Michael Gelbort, a clinical neuropsychologist, who testified that Carter could not accurately describe historical events from his case and could not learn and retain new information. On the other hand, Resnick testified that Carter could provide basic details to his counsel, albeit without much elaboration. He also believed, based upon the opinion of a social worker who had

worked with Carter and not upon his own clinical examination, that Carter had accepted that he would be executed if he lost his appeals.

Approximately two years later, Stinson provided the court with an updated description of Carter's condition. Stinson opined that Carter's condition had become "progressively worse, and despite treatment, he appears to have significant psychosis and functional limitations even when he is at his expected baseline." Based upon the evidence presented at the hearing and Stinson's update, the court concluded that Carter was incompetent to understand his current position or to assist his habeas counsel. As a result, the court dismissed the habeas petition without prejudice and prospectively tolled the AEDPA statute of limitations until Carter regained competency.

## II. DISCUSSION

### A. The Right to Competence in the Habeas Context

Federal habeas petitioners facing the death penalty for state criminal convictions do not enjoy a constitutional right to competence. However, the Supreme Court held long ago that they do have a statutory right to competence in certain situations. In *Rees v. Peyton*, 384 U.S. 312, 313-14 (1966), a habeas petitioner facing death row petitioned the Court for a writ of certiorari, but subsequently "directed his counsel to withdraw the petition and forgo any further legal proceedings." To the Court, "[w]hether or not [the defendant] shall be allowed in these circumstances to withdraw his certiorari petition is a question which it is ultimately the responsibility of this Court to determine, in the resolution of which Rees' mental competence is of prime importance." *Id.* at 313. The Court ordered the district court to "make a judicial determination as to Rees' mental competence and render a report on the matter" in order to "aid . . . the proper exercise of th[e] Court's certiorari jurisdiction." *Id.* at 313-14. To accomplish this goal, the Court directed the district court to apply 18 U.S.C. §§ 4244-4245, which has been recodified as 18 U.S.C. § 4241. *Id.* at 314.

Section 4241 states that a district court may hold a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a

mental disease or defect rendering him mentally incompetent to the extent that he is *unable to understand the nature and consequences of the proceedings* against him or to *assist properly in his defense*." 18 U.S.C. § 4241 (2006) (emphasis added). If, according to this standard, the district court concludes that a defendant is mentally incompetent, the court:

> shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--
>
>> (1)     for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>>
>> (2)     for an additional reasonable period of time until--
>>
>>> (A)     his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>>>
>>> (B)     the pending charges against him are disposed of according to law;
>>
>> whichever is earlier.

*Id.* § 4241(d). Additionally, section 4241(d) explains that if the defendant's mental condition does not improve, he may be institutionalized for a longer period of time according to 18 U.S.C. §§ 4246, 4248. *Id.*

By applying section 4241 to habeas actions, *Rees* addresses the situation where a habeas petitioner awaiting the death penalty may seek to forego any collateral attacks on his conviction or sentence, and defines a statutory right for the petitioner to be competent enough to (1) understand the nature and consequences of the proceedings against him, and (2) assist properly in his defense.

Furthermore, we have relied on *Rees* and held that federal habeas courts may conduct preliminary hearings to determine "whether there was 'reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect

rendering him mentally incompetent' to waive his right to further appeals." *Harper v. Parker*, 177 F.3d 567, 571 (6th Cir. 1999) (quoting 18 U.S.C. § 4241). A district court's determination whether there was "reasonable cause" is reviewed for abuse of discretion. *Id.* at 571-72.

In *Harper*, a psychiatrist had diagnosed a habeas petitioner as schizophrenic and opined that he was incompetent to assist in his defense. *Id.* at 568. The petitioner's counsel moved for a pre-petition competency hearing because the petitioner wanted to waive all his remaining post-conviction proceedings. *Id.* at 568. We held that the district court properly conducted a section 4241 hearing to determine whether the petitioner was competent to proceed. *Id.* at 571. We also held that the district court did not abuse its discretion in holding that the petitioner was competent to proceed based upon the evidence presented and the petitioner's participation in the hearing. *Id.* at 572.

*Rees* and *Harper* anticipate any situation where a capital habeas petitioner chooses to forego seeking his habeas relief. They do not cabin the application of section 4241 to only scenarios where a petitioner chooses to terminate an appeal, or begin, pause, or delay one for that matter. Anytime a capital habeas petitioner affirmatively seeks to forego his habeas petition, whether by action or inaction, *Rees* and *Harper* hold that a district court may employ section 4241. Additionally, *Rees* and *Harper* are clear that this is a one-way street. Only the petitioner's indication to forego his appeal may trigger section 4241's application. The state cannot forcibly activate section 4241.

Based on *Rees* and *Harper*, the district court did not abuse its discretion in conducting a section 4241 competency hearing. Carter had refused to meet with his attorneys to discuss collateral attacks on his conviction, worrying them that he might not pursue his habeas petition. Carter's attorneys also claimed that Carter could not understand the proceedings or assist counsel in his defense. At the hearing, the court heard expert testimony from both parties that Carter suffered from multiple psychological disorders affecting his abilities to relay facts to his counsel and communicate in detail. Carter's experts believed that any discourse that Carter could engage in with his attorneys would be meaningless because of his complete lack of

detailed communication. Furthermore, Carter's experts testified that he was confused as to the identity of his counsel and that he believed he would not be executed unless he volunteered; an irreversibly dangerous false belief. While Resnick disagreed and opined that Carter had finally accepted that he would be executed unless he prevailed upon collateral appeal, Resnick did not make this finding himself, opting instead to adopt the non-scientific conclusion of a social worker who did not testify at the hearing.

The district court did not abuse its discretion in conducting a competency hearing. Carter's refusal to meet with his attorneys to discuss collateral attacks on his conviction would have terminated any right to pursue a habeas writ if it extended beyond the AEDPA statute of limitations. The district court also did not abuse its discretion in finding that there was reasonable cause to believe that Carter was incompetent, and in further finding that he was incompetent to assist his counsel.

## B.        The Proper Remedy

### 1.        The district court's dismissal without prejudice and prospective tolling of the AEDPA statute of limitations

The district court dismissed Carter's petition without prejudice and prospectively tolled the statute of limitations largely based on the holding in *Hargrove v. Brigano*, 300 F.3d 717 (6th Cir. 2002). In *Hargrove*, a petitioner filed a habeas petition asserting claims that had not been exhausted at the state level. *Id.* at 718. The district court dismissed the petition without prejudice and equitably tolled the AEDPA statute of limitations prospectively upon the condition that the petitioner exhaust his claims at the state level and return to federal court within thirty days. *Id.* The respondent argued that a court cannot prospectively toll a statute of limitations because tolling is an issue that should be presented to a court later in time after the statute has expired. Nevertheless, we affirmed the district court's decision, remarking that the court had basically achieved a stay and abeyance and still ensured that the "case would move forward expeditiously." *Id.* at 721.

However, the decision in *Hargrove* cannot be applied to Carter's case for three reasons. First, it could potentially toll the AEDPA statute of limitations indefinitely.

That result would be quite different than the thirty-day window in *Hargrove* that we noted would still allow the case to be resolved expeditiously. The result would not resemble a stay and abeyance and could prevent either party from ever presenting its case to the district court.

Second, in *Hargrove*, the petitioner had the onus to act in order to preserve his petition, and the respondent had no burden besides defending against the petition. Here, however, the onus would shift to the respondent. An indefinite toll would prevent Bradshaw from defending against the petition unless she continually filed petitions seeking enforcement of the state conviction and sentence.

Finally, the petition in *Hargrove* was tolled so that the petitioner could exhaust his claims at the state level and quickly return to federal court instead of forcing him to file a new petition. This jurisdictional reason is far different from the issue of incompetency.

Furthermore, it does not appear that any case has ever held that the AEDPA statute of limitations may be equitably tolled prospectively because the petitioner was incompetent. The only published authority we have found where equitable tolling was applied in habeas cases because of the petitioner's incompetence is from our sister circuits, and tolling was applied in those cases *retrospectively*. *See Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010); *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003); *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) (overruled in part on other grounds by *Carey v. Saffold*, 536 U.S. 214 (2002)); *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999).

Accordingly, it was improper for the district court to dismiss Carter's petition and prospectively toll the AEDPA statute of limitations indefinitely.

### 2.       **Next friends**

Bradshaw contends that the district court should appoint a next friend who can continue to litigate Carter's petition on his behalf. Generally, next friends proceed in litigation on behalf of a party that cannot seek relief because of incompetence or inaccessibility. *Whitmore v. Arkansas*, 495 U.S. 149, 162 (1990). The federal habeas statute specifically anticipates that a petition may be filed by someone other than the petitioner acting on the petitioner's behalf. 28 U.S.C. § 2242. To that end, we have recognized a district court's ability to appoint a next friend for a habeas petitioner on death row who is incompetent. *See Martiniano ex rel. Reid v. Bell*, 454 F.3d 616, 617 (6th Cir. 2006). However, before appointing a next friend to an incompetent habeas petitioner, a court must find that the next friend is "truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Whitmore*, 495 U.S. at 163. "[T]he writ of habeas corpus should [not] be availed of, as matter of course, by intruders or uninvited meddlers, styling themselves next friends." *Id.* at 164 (internal quotations and citation omitted). Indeed, it is preferred, if not required, that a next friend "have some significant relationship with the real party in interest." *Id.* Importantly, the next friend must have more than merely "a generalized interest in constitutional governance." *Id.*

We find these qualifications for a next friend especially significant for Carter's claims of ineffective assistance of counsel. Only Carter knows critical parts of the factual basis for these claims. As the district court noted, Carter alone has evidence of the interactions between him and his trial and appellate attorneys, and that evidence is inaccessible as long as he remains unable to communicate with his habeas attorneys. Really, a next friend could no more than speculate as to the evidence that Carter may know, and Carter "is better positioned than anyone" to provide that evidence in support of his claim. *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 818 (9th Cir. 2003). Therefore, a next friend would be just as unable as Carter to assist Carter's attorneys in this respect. *See id.* (commenting that only the habeas petitioner's "private knowledge" could truly support his ineffective assistance claim because of his "unique position to testify about the extent of his trial counsel's efforts"); *see also Holmes v. Buss*, 506 F.3d

576, 580 (7th Cir. 2007) (noting that, unlike most cases, a habeas petitioner can contribute to his attorney's strategy concerning claims of ineffective assistance and prosecutorial misconduct because he was present for the trial, his habeas counsel was not, and he may retain "a better sense of the alleged misbehavior of the prosecutor and of defense counsel than the trial transcript and other documentation provide").

Where the factual basis for Carter's claims is locked away exclusively in his memory, he faces the lonely certainty that no friends in this world could *meaningfully* be dedicated to his interests because they lack the benefit of his knowledge. Even Carter's most ardent supporters might be subjectively dedicated to litigating on his behalf, but as long as they lack the facts that are vital to Carter's claims, they cannot be dedicated in the sense necessary for a next friend to stand fully in Carter's place litigating his claims as wholly as he can. It would be inappropriate to appoint a next friend for Carter's ineffective assistance of counsel claims where the next friend would be forced to proceed through this action without the foundational facts that support Carter's claims.

However, we recognize that Carter's other claims might possibly be litigated without his assistance. Just because Carter might be able to contribute assistance to all his claims does not mean that his assistance is essential. The district court must determine whether it can fully and fairly adjudicate Carter's other claims without evidence from Carter. Perhaps some claims require no evidence from Carter whatsoever. Perhaps others could benefit from it, but that evidence could be replicated by, or substituted with, other sources. If the district court determines that Carter's assistance is not essential to the adjudication of these other claims, then the court should appoint a next friend to litigate them.

### 3.    Stay of the proceedings according to section 4241(d)

Instead of dismissing Carter's petition without prejudice and prospectively tolling the AEDPA statute of limitations, the district court should have followed the path taken in *Rohan*, a similar case that the district court cited. In *Rohan*, 334 F.3d at 819, the Ninth Circuit held that habeas proceedings should be stayed until the petitioner is

found to be competent to proceed.  Every court has the incidental power to stay proceedings and manage its docket as it sees fit.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Furthermore, federal courts overseeing habeas actions have statutory authority to stay state court proceedings for any matter relating to the habeas proceeding. *McFarland v. Scott*, 512 U.S. 849, 857 (1994) (citing 28 U.S.C. § 2251).  Staying Carter's habeas petition would fall in line with section 4241(d) whereby a court may hospitalize incompetent defendants until they are competent to proceed, and we have already applied section 4241(d) to habeas cases.  *See Hargrove*, 300 F.3d at 721. Moreover, in *Hargrove*, we favorably likened the temporary prospective tolling of the statue of limitations to a stay and abeyance, hinting at our approval for such a course of action. *Id.*  Understandably, the district court may have wished to remove this case from its docket instead of letting it linger, but dismissing the case inconveniences Bradshaw by forcing her to lay aside Ohio's execution of Carter until some unknown time in the future.  It also reduces the possibility that Carter's petition will ever be considered by the district court, thus dashing his hopes to establish his entitlement to habeas relief. Staying the proceedings according to section 4241(d) would allow all parties to remain actively involved and the court to monitor Carter's on-going condition.

Accordingly, we amend the district court's judgment.  The district court should not have dismissed Carter's habeas petition without prejudice.  Instead, Carter's petition should be stayed according to section 4241(d) with respect to his ineffective assistance claims and any other claims that the district court determines essentially require his assistance.

### III.  CONCLUSION

The district court did not abuse its discretion in holding a pre-petition competency hearing or by concluding that Carter was incompetent.  However, dismissing Carter's petition and equitably tolling the AEDPA statute of limitations prospectively was an inappropriate disposition.  Rather, with respect to Carter's ineffective assistance claims, the habeas proceedings should be stayed until Carter is competent according to section 4241.  The district court must examine the remainder of

Carter's claims to determine whether Carter's assistance is essential to their full and fair adjudication. If not, the court should appoint a next friend to litigate those claims. Accordingly, we **AMEND** the district court's judgment and **REMAND** the case to the district court for proceedings in accordance with this opinion.

———————————

**DISSENT**

———————————

ROGERS, J., dissenting.  Today the court allows habeas petitioners to prevent States from enforcing their judgments, potentially forever, on the grounds of a nonexistent right to competency in habeas proceedings.  The asserted right has no basis in the Constitution or federal statutes.  Civil suits can be brought by lawyers representing mentally incompetent plaintiffs, and habeas cases are no different.  Nor are capital cases different in this respect.

First of all, the Constitution, in a point conceded by the majority and all but admitted by Carter's counsel during oral argument, does not provide a right to competency in habeas proceedings.  As the Supreme Court explained in *United States v. MacCollom*, 426 U.S. 317, 323 (1976), due process "certainly does not establish any right to collaterally attack a final judgment of conviction."  Moreover, the Court held in *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), that there is no constitutional right to counsel for habeas proceedings.  If Carter has no constitutional right to a habeas proceeding in the first place, and has no constitutional right to counsel at that proceeding, he logically cannot have the right to be competent so as to communicate with and/or assist counsel during his habeas proceeding.  This conclusion is buttressed by *Whitmore v. Arkansas*, 495 U.S. 149, 162-64 (1990), in which the Supreme Court explicitly recognized that a "next friend" can be appointed to initiate and pursue claims on behalf of a habeas petitioner who is mentally incapacitated.  If the law permits a next friend to be appointed in order to prosecute the claims of an incompetent habeas petitioner, it cannot also require that a petitioner's habeas proceeding be indefinitely stayed if a court deems the petitioner incompetent.

This case does not involve the separate right of a condemned prisoner to be competent at the time of execution.  *See Ford v. Wainwright*, 477 U.S. 399 (1986).  That right has to do with the nature of the punishment, and little to do with whether a habeas

petition can proceed in order to determine whether the petitioner has been constitutionally convicted.

This case also does not involve the constitutional right to competency during the trial itself. *See e.g., Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). There is a world of difference between trial and collateral attack. Assisting counsel in one's defense at trial is one thing, where the central issue is whether or not the defendant is guilty, and where counsel is constitutionally required. Assisting one's counsel in a habeas petition is another thing, where the central issue is whether the defendant's constitutional rights were violated, and due process does not even require that counsel be provided.

The Constitution thus does not provide that capital habeas petitions be stayed as long as the petitioner is not competent.

There is also no statutory basis for such a conclusion. *Rees v. Peyton (Rees I)*, 384 U.S. 312 (1966), cited by the majority, cannot be read to extend a statutory right to competency to the circumstances of the instant case. In *Rees*, the district court rejected a death row inmate's habeas petition, the court of appeals affirmed, and the inmate's counsel then filed a petition for certiorari with the Supreme Court. *Id.* at 312-13. Soon after, the inmate directed his counsel to withdraw his petition for certiorari. *Id.* at 313. The Court ordered the district court to conduct a competency determination of the inmate and retained jurisdiction of the certiorari petition pending the results of the hearing. *Id.* at 314. Following a hearing in which the district court found the inmate incompetent, the Supreme Court issued a summary order stating, "This case is held without action on the petition until further order of the Court." *Rees v. Peyton (Rees II)*, 386 U.S. 989 (1967). This court also applied *Rees* in *Harper v. Parker*, 177 F.3d 567, 571 (6th Cir. 1999), where we held that district courts may conduct preliminary hearings to determine "whether there was 'reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent' to waive his right to further appeals." *Id.* (quoting 18 U.S.C. § 4241).

Thus, *Rees* and *Harper* plausibly stand for the proposition that habeas petitioners must be competent in order to *terminate* a habeas proceeding. They do not stand for the

very different proposition that habeas petitioners must be competent to *assist counsel in the prosecution* of their habeas petition. The distinction is crucial. When a habeas petitioner seeks to withdraw his habeas petition, he is choosing to end what is likely to be his only chance at reversing his conviction and regaining his freedom. This is a decision inherently to be made by the petitioner, and not while the petitioner is incompetent to do so. When a habeas petitioner files his petition and then becomes incompetent to assist his counsel in prosecuting it, however, there is no comparable client decision to be made.

Stated differently, the *Rees* precedent can be read to create an assumption that a habeas challenge to a death penalty will go forward unless the petitioner competently terminates it. Such an assumption cannot logically require that the habeas proceeding will *not* go on—or indeed that it will be resolved in petitioner's favor—merely because the petitioner is not competent to terminate it.

The statute referred to by the Supreme Court in *Rees*, 18 U.S.C. § 4241, provides for competency hearings for defendants in criminal proceedings, and cannot be read to extend to post-conviction proceedings. The Supreme Court took the standard from that statute and adopted it for the purpose of determining whether the habeas petitioner in *Rees* was competent to terminate the habeas proceedings. The Court's adoption of the statutory standard for one required inquiry (competency to terminate proceedings) does not logically imply that another inquiry (competency to assist habeas counsel) needs to be made in the first place. Notably, the Ninth Circuit, in its lengthy opinion holding that incompetent habeas petitioners are entitled to a stay, does not rely on § 4241 as so providing. *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir. 2003).

Instead, the Ninth Circuit's holding is based on a different statute, one upon which the majority in this case wisely declines to rely. In *Rohan*, the district court held a competency hearing for a death row habeas petitioner and concluded that the petitioner was incompetent. *Id.* at 806. Nonetheless, the district court went on to deny the petitioner's request for a stay of his habeas proceedings, holding that neither the Constitution nor the federal habeas statutes required that the proceedings be stayed,

because the appointment of a "next friend" adequately protected the petitioner's interests. *Id.* The Ninth Circuit reversed. The Ninth Circuit interpreted 21 U.S.C. § 848(q)(4)(B) (now recodified as 18 U.S.C. § 3599(a)(2)), which provides for appointed counsel in death penalty habeas proceedings, as implying a right to "meaningful" assistance of counsel, which itself depends on the petitioner's ability to communicate rationally with counsel. *Id.* at 812-13. Hence, concluded the Ninth Circuit, Congress *meant* (though it never said) that a habeas petitioner has the right to be competent during his habeas proceedings. *Id.* at 813.

But the plain language of the statute provides for no such right, and none is ever mentioned. Instead, Congress provided a detailed list of instructions and specifications governing appointed counsel's qualifications and experience in capital habeas proceedings. *See* 18 U.S.C. § 3599(b)-(e). These provisions in no way speak to the *actual effectiveness* of counsel's performance during a habeas proceeding, they simply prescribe a minimum level of background knowledge for appointed counsel. In particular, they say nothing about the competency of the petitioner.

The *Rohan* court relied in part on the implication of a right to competency from a right to counsel from other contexts, such as the constitutional right to competency at trial. *Rohan*, 334 F.3d at 813. But trial and post-conviction proceedings are different, and in any event the inference as a statutory matter is directly contradicted by a specific statutory provision. AEDPA forecloses claims on collateral attack for ineffective assistance of habeas counsel: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see Benner v. Coyle*, No. 99-3570, 1999 WL 33453848, at *1 (6th Cir. Nov. 1, 1999). If an underlying right to effective assistance of habeas counsel cannot be implied from 18 U.S.C. § 3599, then the derivative right to be competent in habeas proceedings so as to assist counsel cannot be implied either.

There is in short no legal basis whatsoever for inferring a right to competency of the petitioner in habeas proceedings. It is a right created out of whole cloth.

It is also a right that is anomalous in its very nature. For practical purposes, the right will be asserted by capital petitioners but not by other petitioners. Capital petitioners gain something (delaying execution) from indefinitely delaying habeas proceedings, while the interests of convicts serving prison terms—whether competent or not—will almost always be served by the prompt litigation of habeas petitions, so as to advance the possibility of release. But acceptance of the right in concept might well require that it be applied to noncapital cases, where prosecutors could insist that habeas be indefinitely delayed. One might argue that noncapital defendants may waive the right, but by hypothesis such defendants are incompetent, and thus might be incapable of waiving the right. So recognition of a right to competency in habeas proceedings means either that prosecutors can for practical purposes insist on indefinite postponement of habeas proceedings where convicts are not competent (a counterintuitive result), or that the difference in punishment—capital vs. noncapital—somehow fundamentally changes the nature of how much a lawyer must have input from the client, such that the right is categorically available only for capital convicts (an anomalous result).

It is also anomalous to have a system in which a civil litigant can go into court and instantly get the relief he seeks merely by showing that he is incompetent. In civil cases in our system, a plaintiff has to show a basis for relief, not merely that he is disabled from making such a showing. While habeas cases deal with criminal convictions, they are at bottom civil cases.

Finally, the very ways in which competency is said to be necessary for habeas petitioners would apply just as strongly to the competency of *witnesses* in habeas proceedings. A key witness in a habeas proceeding—one whose input or testimony might make all the difference—might become incompetent or be unable to testify. But no one would argue that a habeas proceeding therefore could not proceed. The parties just have to do the best that is possible with the witnesses and testimony that are available, subject to the rules of evidence.

These concerns are reflected in the facts of this case. Although the district court found that several of Carter's habeas claims could potentially benefit from his assistance,

at least three of these claims plainly do not require any input from Carter for their successful prosecution. Thus, even recognizing a right to competency does not prevent the district court from resolving the merits of at least these habeas claims. These include Carter's claims that: (1) he was incompetent to stand trial; (2) his trial counsel was ineffective for failing to pursue the issue of his competency; and (3) his appellate counsel was ineffective for not appealing the trial court's failure to ensure that he was competent. As for the first of these three claims, Carter's competency is a question of fact, *see Thompson v. Keohane*, 516 U.S. 99, 111 (1995), and he has the burden of rebutting the presumption that the state court's factual findings were correct, *see* 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). Carter's competency claim thus depends entirely on the evidence available to the state trial court. The trial court in this case held two competency hearings before trial and found Carter competent after both. Carter's counsel can, as they have already done in his habeas petition, point out any errors in the trial court's assessment of Carter's competency so as to prove that the state-court decision was contrary to or an unreasonable application of federal law or was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). They can clearly do so without the need for information available only to Carter.

The same is true for the other two claims. As noted, the record for this case already contains extensive evidence concerning Carter's competency. The record also sufficiently reflects Carter's trial counsel's efforts to prove that he was incompetent and how his appellate counsel handled the competency issue on appeal. No information available only to Carter would alter the merits of these claims for purposes of the habeas standard. Perhaps recognizing this, the majority fashions the particularly anomalous remedy of remanding the case in part, for the district court to identify those claims that do not require Carter's assistance and then to appoint a next friend to litigate those claims on Carter's behalf. This "remedy," however, necessarily has the incongruous effect of staying part of the case indefinitely while allowing another part of the case to go forward, with the scope of the latter part to be determined wholly by the district court. This compounds the hobbling of the State's legitimate interests in finality and execution of its judgments.

Two of the remaining claims identified by the district court—Carter's removal from the trial proceedings and the ineffective assistance of his trial counsel during mitigation—could potentially benefit from Carter's assistance. In the first place, it is questionable whether, under the evidentiary limitations imposed by AEDPA, Carter's counsel could introduce new evidence on habeas review in support of these claims, even if Carter were competent.[1] More fundamentally, however, any assistance that Carter could give would be conceptually indistinguishable from that of a witness. The assistance, if any, from Carter would be the provision of information that could be used to support the claims. But that is exactly what a witness provides. The incompetency of witnesses does not stop civil proceedings, and it is anomalous that the incompetency of a plaintiff should stop proceedings entirely because the party cannot act as a witness.

Requiring competency on the part of capital habeas petitioners is not compelled by the right to competency at trial, the right to competency in waiving further habeas proceedings, or the right to be competent at the time of execution. The new "right" is not provided by either the Constitution or any statute. It is instead an anomalous monkey wrench thrown into the capital-litigation process.

The district court's order should be reversed, and the case remanded in full so that the habeas proceeding can go forward on all of Carter's claims.

---

[1]For the claim concerning Carter's removal from the trial proceedings, Carter first raised this as an instance of ineffective assistance of appellate counsel in his Ohio Rule of Appellate Procedure 26(B) application to reopen his direct appeal. Carter's Rule 26(B) application, however, did not include an affidavit from Carter concerning whether he wanted to be in the courtroom for his trial and sentencing. Under the Ohio Rules, Carter's application to reopen his direct appeal needed to contain a sworn statement of the basis for his claim of ineffective assistance of appellate counsel, any parts of the record available to him, and all supplemental affidavits upon which he relied. Ohio R. App. P. 26(B)(2); *Morgan v. Eads*, 818 N.E.2d 1157, 1159 (Ohio 2004). Ohio courts hold that the failure to support an ineffective-assistance-of-appellate-counsel claim with material outside the record is grounds for dismissal of a Rule 26(B) application. *See State v. Griffie*, 658 N.E.2d 764, 765 (Ohio 1996); *State v. Dillon*, 657 N.E.2d 273, 277 (Ohio 1995). Carter therefore failed to develop the factual basis for his removal-from-trial claim, and the claim does not meet the requirements of 28 U.S.C. § 2254(e)(2) since it is not based on a new constitutional right and does not involve evidence that he was actually innocent. *See* 28 U.S.C. § 2254(e)(2)(A), (B). With respect to his ineffective-assistance-during-mitigation claim, Carter requested an evidentiary hearing when he filed his state post-conviction petition, but he failed to submit any evidentiary documents in support of the claim. *See* Ohio Rev. Code § 2953.21(C); *State v. Jackson*, 413 N.E.2d 819, 822 (Ohio 1980). Hence, Carter also failed to develop the factual basis of this claim, and the claim also is not based on a new constitutional right and does not involve evidence that Carter is actually innocent. *See* 28 U.S.C. § 2254(e)(2)(A), (B).