MARTIN, J., delivered the opinion of the court, in which COLE, J., joined. ROGERS, J. (pp. 337-42), delivered a separate dissenting opinion.
OPINION
BOYCE F. MARTIN, JR., Circuit Judge.
In this habeas action where petitioner Sean Carter is facing the death penalty according to his Ohio conviction, the district court found that Carter is incompetent, dismissed his petition without prejudice, and equitably tolled the Anti-terrorism and Effective Death Penalty Act statute of limitations prospectively until he is competent to proceed. Respondent Warden Margaret Bradshaw appeals that decision. For the following reasons, we AMEND the district court’s judgment and REMAND the case to the district court for proceedings in accordance with this opinion.
I. BACKGROUND
For a full description of the facts of this case, we point to the thorough order of the district court. We detail here only the facts necessary for our discussion. After Carter exhausted the Ohio state review processes for his conviction, he was housed in a facility for prisoners with severe mental illnesses. His attorneys attempted to meet with him there to discuss avenues for *332 collateral appeal, but he refused to see them. Worried that their client was incompetent and choosing to forego further appeals of his conviction and sentence, the attorneys filed Carter’s habeas petition and a motion for a pre-petition competency hearing.
The district court held a competency hearing on May 1, 2006 at which experts for both parties agreed that Carter suffered from schizophrenia, personality disorder, and hallucinations. They also agreed that he was not able to fully and articulately communicate with his counsel, but they disagreed as to how well he could assist his counsel in his case. Carter’s first expert, Dr. Robert Stinson, opined that Carter lacked a factual understanding of the proceedings. He explained that Carter could not provide details or elaboration, or engage in dialogue. Additionally, he explained that Carter did not believe he could be executed unless he volunteered, and that Carter could not accurately identify his attorneys, instead thinking that Bradshaw’s expert, Dr. Phillip Resnick, was his attorney. Carter also called Dr. Michael Gelbort, a clinical neuropsychologist, who testified that Carter could not accurately describe historical events from his case and could not learn and retain new information. On the other hand, Res-nick testified that Carter could provide basic details to his counsel, albeit without much elaboration. He also believed, based upon the opinion of a social worker who had worked with Carter and not upon his own clinical examination, that Carter had accepted that he would be executed if he lost his appeals.
Approximately two years later, Stinson provided the court with an updated description of Carter’s condition. Stinson opined that Carter’s condition had become “progressively worse, and despite treatment, he appears to have significant psychosis and functional limitations even when he is at his expected baseline.” Based upon the evidence presented at the hearing and Stinson’s update, the court concluded that Carter was incompetent to understand his current position or to assist his habeas counsel. As a result, the court dismissed the habeas petition without prejudice and prospectively tolled the AEDPA statute of limitations until Carter regained competency.
II. DISCUSSION
A. The Right to Competence in the Habeas Context
Federal habeas petitioners facing the death penalty for state criminal convictions do not enjoy a constitutional right to competence. However, the Supreme Court held long ago that they do have a statutory right to competence in certain situations. In Rees v. Peyton, 384 U.S. 312, 313-14, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), a habeas petitioner facing death row petitioned the Court for a writ of certiorari, but subsequently “directed his counsel to withdraw the petition and forgo any further legal proceedings.” To the Court, “[w]hether or not [the defendant] shall be allowed in these circumstances to withdraw his certiorari petition is a question which it is ultimately the responsibility of this Court to determine, in the resolution of which Rees’ mental competence is of prime importance.” Id. at 313, 86 S.Ct. 1505. The Court ordered the district court to “make a judicial determination as to Rees’ mental competence and render a report on the matter” in order to “aid ... the proper exercise of th[e] Court’s certiorari jurisdiction.” Id. at 313-14, 86 S.Ct. 1505. To accomplish this goal, the Court directed the district court to apply 18 U.S.C. §§ 4244-4245, which has been recodified as 18 U.S.C. § 4241. Id. at 314, 86 S.Ct. 1505.
*333 Section 4241 states that a district court may hold a competency hearing “if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.” 18 U.S.C. § 4241 (2006) (emphasis added). If, according to this standard, the district court concludes that a defendant is mentally incompetent, the court:
shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
(2) for an additional reasonable period of time until—
(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
(B) the pending charges against him are disposed of according to law;
whichever is earlier.
Id. § 4241(d). Additionally, section 4241(d) explains that if the defendant’s mental condition does not improve, he may be institutionalized for a longer period of time according to 18 U.S.C. §§ 4246, 4248. Id.
By applying section 4241 to habeas actions, Rees addresses the situation where a habeas petitioner awaiting the death penalty may seek to forego any collateral attacks on his conviction or sentence, and defines a statutory right for the petitioner to be competent enough to (1) understand the nature and consequences of the proceedings against him, and (2) assist properly in his defense.
Furthermore, we have relied on Rees and held that federal habeas courts may conduct preliminary hearings to determine “whether there was ‘reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent’ to waive his right to further appeals.” Harper v. Parker; 177 F.3d 567, 571 (6th Cir.1999) (quoting 18 U.S.C. § 4241). A district court’s determination whether there was “reasonable cause” is reviewed for abuse of discretion. Id. at 571-72.
In Harper, a psychiatrist had diagnosed a habeas petitioner as schizophrenic and opined that he was incompetent to assist in his defense. Id. at 568. The petitioner’s counsel moved for a pre-petition competency hearing because the petitioner wanted to waive all his remaining post-conviction proceedings. Id. at 568. We held that the district court properly conducted a section 4241 hearing to determine whether the petitioner was competent to proceed. Id. at 571. We also held that the district court did not abuse its discretion in holding that the petitioner was competent to proceed based upon the evidence presented and the petitioner’s participation in the hearing. Id. at 572.
Rees and Harper anticipate any situation where a capital habeas petitioner chooses to forego seeking his habeas relief. They do not cabin the application of section 4241 to only scenarios where a peti *334 tioner chooses to terminate an appeal, or begin, pause, or delay one for that matter. Anytime a capital habeas petitioner affirmatively seeks to forego his habeas petition, whether by action or inaction, Rees and Harper hold that a district court may employ section 4241. Additionally, Rees and Harper are clear that this is a one-way street. Only the petitioner’s indication to forego his appeal may trigger section 4241’s application. The state cannot forcibly activate section 4241.
Based on Rees and Harper, the district court did not abuse its discretion in conducting a section 4241 competency hearing. Carter had refused to meet with his attorneys to discuss collateral attacks on his conviction, worrying them that he might not pursue his habeas petition. Carter’s attorneys also claimed that Carter could not understand the proceedings or assist counsel in his defense. At the hearing, the court heard expert testimony from both parties that Carter suffered from multiple psychological disorders affecting his abilities to relay facts to his counsel and communicate in detail. Carter’s experts believed that any discourse that Carter could engage in with his attorneys would be meaningless because of his complete lack of detailed communication. Furthermore, Carter’s experts testified that he was confused as to the identity of his counsel and that he believed he would not be executed unless he volunteered; an irreversibly dangerous false belief. While Resnick disagreed and opined that Carter had finally accepted that he would be executed unless he prevailed upon collateral appeal, Resnick did not make this finding himself, opting instead to adopt the nonscientific conclusion of a social worker who did not testify at the hearing.
The district court did not abuse its discretion in conducting a competency hearing. Carter’s refusal to meet with his attorneys to discuss collateral attacks on his conviction would have terminated any right to pursue a habeas writ if it extended beyond the AEDPA statute of limitations. The district court also did not abuse its discretion in finding that there was reasonable cause to believe that Carter was incompetent, and in further finding that he was incompetent to assist his counsel.
B. The Proper Remedy
1. The district court’s dismissal without prejudice and prospective tolling of the AEDPA statute of limitations
The district court dismissed Carter’s petition without prejudice and prospectively tolled the statute of limitations largely based on the holding in Hargrove v. Brigano, 300 F.3d 717 (6th Cir.2002). In Hargrove, a petitioner filed a habeas petition asserting claims that had not been exhausted at the state level. Id. at 718. The district court dismissed the petition without prejudice and equitably tolled the AEDPA statute of limitations prospectively upon the condition that the petitioner exhaust his claims at the state level and return to federal court within thirty days. Id. The respondent argued that a court cannot prospectively toll a statute of limitations because tolling is an issue that should be presented to a court later in time after the statute has expired. Nevertheless, we affirmed the district court’s decision, remarking that the court had basically achieved a stay and abeyance and still ensured that the “case would move forward expeditiously.” Id. at 721.
However, the decision in Hargrove cannot be applied to Carter’s case for three reasons. First, it could potentially toll the AEDPA statute of limitations indefinitely. That result would be quite different than the thirty-day window in Hargrove that we noted would still allow the case to be re *335 solved expeditiously. The result would not resemble a stay and abeyance and could prevent either party from ever presenting its case to the district court.
Second, in Hargrove, the petitioner had the onus to act in order to preserve his petition, and the respondent had no burden besides defending against the petition. Here, however, the onus would shift to the respondent. An indefinite toll would prevent Bradshaw from defending against the petition unless she continually filed petitions seeking enforcement of the state conviction and sentence.
Finally, the petition in Hargrove was tolled so that the petitioner could exhaust his claims at the state level and quickly return to federal court instead of forcing him to file a new petition. This jurisdictional reason is far different from the issue of incompetency.
Furthermore, it does not appear that any case has ever held that the AEDPA statute of limitations may be equitably tolled prospectively because the petitioner was incompetent. The only published authority we have found where equitable tolling was applied in habeas cases because of the petitioner’s incompetence is from our sister circuits, and tolling was applied in those cases retrospectively. See Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir.2010); Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir.2003); Nara v. Frank, 264 F.3d 310, 320 (3d Cir.2001) (overruled in part on other grounds by Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)); Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir.1999).
Accordingly, it was improper for the district court to dismiss Carter’s petition and prospectively toll the AEDPA statute of limitations indefinitely.
2. Next friends
Bradshaw contends that the district court should appoint a next friend who can continue to litigate Carter’s petition on his behalf. Generally, next friends proceed in litigation on behalf of a party that cannot seek relief because of incompetence or inaccessibility. Whitmore v. Arkansas, 495 U.S. 149, 162, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). The federal habeas statute specifically anticipates that a petition may be filed by someone other than the petitioner acting on the petitioner’s behalf. 28 U.S.C. § 2242. To that end, we have recognized a district court’s ability to appoint a next friend for a habeas petitioner on death row who is incompetent. See Martiniano ex rel. Reid v. Bell, 454 F.3d 616, 617 (6th Cir.2006). However, before appointing a next friend to an incompetent habeas petitioner, a court must find that the next friend is “truly dedicated to the best interests of the person on whose behalf he seeks to litigate.” Whitmore, 495 U.S. at 163, 110 S.Ct. 1717. “[T]he writ of habeas corpus should [not] be availed of, as matter of course, by intruders or uninvited meddlers, styling themselves next friends.” Id. at 164, 110 S.Ct. 1717 (internal quotations and citation omitted). Indeed, it is preferred, if not required, that a next friend “have some significant relationship with the real party in interest.” Id. Importantly, the next friend must have more than merely “a generalized interest in constitutional governance.” Id.
We find these qualifications for a next friend especially significant for Carter’s claims of ineffective assistance of counsel. Only Carter knows critical parts of the factual basis for these claims. As the district court noted, Carter alone has evidence of the interactions between him and his trial and appellate attorneys, and that evidence is inaccessible as long as he re *336 mains unable to communicate with his habeas attorneys. Really, a next friend could no more than speculate as to the evidence that Carter may know, and Carter “is better positioned than anyone” to' provide that evidence in support of his claim. Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 818 (9th Cir.2003). Therefore, a next friend would be just as unable as Carter to assist Carter’s attorneys in this respect. See id. (commenting that only the habeas petitioner’s “private knowledge” could truly support his ineffective assistance claim because of his “unique position to testify about the extent of his trial counsel’s efforts”); see also Holmes v. Buss, 506 F.3d 576, 580 (7th Cir.2007) (noting that, unlike most cases, a habeas petitioner can contribute to his attorney’s strategy concerning claims of ineffective assistance and prosecutorial misconduct because he was present for the trial, his habeas counsel was not, and he may retain “a better sense of the alleged misbehavior of the prosecutor and of defense counsel than the trial transcript and other documentation provide”).
Where the factual basis for Carter’s claims is locked away exclusively in his memory, he faces the lonely certainty that no friends in this world could meaningfully be dedicated to his interests because they lack the benefit of his knowledge. Even Carter’s most ardent supporters might be subjectively dedicated to litigating on his behalf, but as long as they lack the facts that are vital to Carter’s claims, they cannot be dedicated in the sense necessary for a next friend to stand fully in Carter’s place litigating his claims as wholly as he can. It would be inappropriate to appoint a next friend for Carter’s ineffective assistance of counsel claims where the next friend would be forced to proceed through this action without the foundational facts that support Carter’s claims.
However, we recognize that Carter’s other claims might possibly be litigated without his assistance. Just because Carter might be able to contribute assistance to all his claims does not mean that his assistance is essential. The district court must determine whether it can fully and fairly adjudicate Carter’s other claims without evidence from Carter. Perhaps some claims require no evidence from Carter whatsoever. Perhaps others could benefit from it, but that evidence could be replicated by, or substituted with, other sources. If the district court determines that Carter’s assistance is not essential to the adjudication of these other claims, then the court should appoint a next friend to litigate them.
3. Stay of the proceedings according to section 4241(d)
Instead of dismissing Carter’s petition without prejudice and prospectively tolling the AEDPA statute of limitations, the district court should have followed the path taken in Rohan, a similar case that the district court cited. In Rohan, 334 F.3d at 819, the Ninth Circuit held that habeas proceedings should be stayed until the petitioner is found to be competent to proceed. Every court has the incidental power to stay proceedings and manage its docket as it sees fit. Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Furthermore, federal courts overseeing habeas actions have statutory authority to stay state court proceedings for any matter relating to the habeas proceeding. McFarland v. Scott, 512 U.S. 849, 857, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) (citing 28 U.S.C. § 2251). Staying Carter’s habeas petition would fall in line with section 4241(d) whereby a court may hospitalize incompetent defendants until they are competent to proceed, and we have already applied section 4241(d) to habeas cases. See Har *337 grove, 300 F.3d at 721. Moreover, in Hargrove, we favorably likened the temporary prospective tolling of the statute of limitations to a stay and abeyance, hinting at our approval for such a course of action. Id. Understandably, the district court may have wished to remove this case from its docket instead of letting it linger, but dismissing the case inconveniences Bradshaw by forcing her to lay aside Ohio’s execution of Carter until some unknown time in the future. It also reduces the possibility that Carter’s petition will ever be considered by the district court, thus dashing his hopes to establish his entitlement to habeas relief. Staying the proceedings according to section 4241(d) would allow all parties to remain actively involved and the court to monitor Carter’s on-going condition.
Accordingly, we amend the district court’s judgment. The district court should not have dismissed Carter’s habeas petition without prejudice. Instead, Carter’s petition should be stayed according to section 4241(d) with respect to his ineffective assistance claims and any other claims that the district court determines essentially require his assistance.
III. CONCLUSION
The district court did not abuse its discretion in holding a pre-petition competency hearing or by concluding that Carter was incompetent. However, dismissing Carter’s petition and equitably tolling the AEDPA statute of limitations prospectively was an inappropriate disposition. Rather, with respect to Carter’s ineffective assistance claims, the habeas proceedings should be stayed until Carter is competent according to section 4241. The district court must examine the remainder of Carter’s claims to determine whether Carter’s assistance is essential to their full and fair adjudication. If not, the court should appoint a next friend to litigate those claims. Accordingly, we AMEND the district court’s judgment and REMAND the ease to the district court for proceedings in accordance with this opinion.